MILLER *v*. BATES ET AL.

(Decided January 16, 1928.)

*Messrs. Day & Day,* for plaintiff.
*Messrs. Boyd, Cannon, Brooks & Wickham,* for defendants.

VICKERY, J.   This action comes into this court on appeal from the common pleas court of Cuyahoga county.

The record brings an interesting and rather singular question before the court.   It seems that Rose Z. Miller, the plaintiff, purchased the parcel of land

in question, described in the petition, on December 10, 1923, and agreed to pay therefor the sum of $6,500; that she made a down payment of $1,625, and agreed to pay the balance in installments of $260 each, with the accumulated interest upon the unpaid balance of the purchase price; and that when she had paid about one-half of the purchase price, a deed was to be given to her and she was to give a mortgage back to secure the unpaid balance of the purchase price.

Before the first payment of $260 became due, which was June, 1924, the defendants, who owned many other lots in the vicinity, had a chance to replat and open up streets and make the whole more valuable, and in order to do so it became necessary for them to have this contract that Mrs. Miller held on this particular lot rescinded, so that they could use that lot. Accordingly in the following March they opened negotiations, through Mr. Miller, who acted as agent for Mrs. Miller, to have her give up her right to this lot. I think three different propositions were made, but they are immaterial here.

These negotiations resulted in an arrangement whereby Mrs. Miller agreed to cancel her contract and give up all right that she had in it, upon the repayment of the money she had paid, to-wit, $1,625, with interest at 7 per cent., together, I believe, with other expenses, if any, that she had been put to. This was the arrangement that was entered into between these people. The land contract was in the possession of the Millers and was not given up, and apparently it was not intended to be given up until the matter was completed.

In the meantime, the June payment of $260, and

interest, became due, and inasmuch as the arrangement of surrendering the contract had not been carried into effect, Mrs. Miller was at a loss what to do in respect to the payment, and so a telephone conference was had with the defendants about this payment, whereupon they advised Mrs. Miller that, under the circumstances, as they intended to go through with their agreement, she need not make that payment, and so Mrs. Miller did not pay it.

For some reason the defendants had difficulty in getting their plat accepted, and it seems that they had an idea that if the plat did not go through, they could not use this lot. In any event, the matter was delayed and the deal never was completed. After the plat was accepted, Mr. Clark, one of the defendants, talked with Mrs. Miller as to whether she was still willing to go through with the transaction, and she stated that she was; but the money was not then paid.

I should state in this connection that there was no time specified when the money should be paid, but about the 15th of August, 1924, the defendants sent to Mrs. Miller a check for $250, and stated that they would pay the balance of the money within 30 days, which would be on the 15th of September, 1924. The 15th of September came and no money with it. The Millers, having held the check for $250, subsequently, before there had been any tender of the money, or any completion of the contract of cancellation of the original contract, withdrew from the proposed contract of cancellation, sent the check for $250 back, and stated that they proposed to stand upon their original contract.

Thereafter, before any suit to forfeit had been

started by the defendants in any way, if such a suit could have been started, because if there was then a delay on the part of the Millers in making payments the same was perfectly traceable to the so-called agreement or understanding between the parties about the cancellation of the contract, as was voiced between the defendants and Mrs. Miller when the June payment from the Millers to the defendants was the subject of conversation—I say, before any attempt had been made by the defendants to forfeit the contract for the non-payment, the plaintiff tendered all the money and interest for the payments that had become due, or would have become due; that is, the payment of June and a few months thereafter, and tendered more than enough money, a hundred dollars, I believe, in order to cover a discrepancy in computation, if there should be any, and subsequently before plaintiff brought her action, she tendered the rest of the money that would be coming due and asked for specific performance of the contract.

That was the issue that was tried in the court below. The court found in favor of the plaintiff and an appeal was taken here.

I should state that the petition of the plaintiff was for specific performance of the contract, but that it was in the alternative; that is, that if the situation of the defendants had changed, or the land had been alienated so that they could not specifically perform their contract, then an accounting should be had between the parties and the plaintiff be awarded what was coming to her on this land contract, as if she owned it in the allotment as it now stands. The accounting was not made because it was thought to

save the expense by first finding out whether or not the court below was right.

Now, it is perfectly manifest from this record that there was not any completed contract of cancellation. It was nothing more than what the Roman law would call a pollicitation; that is, an unaccepted offer. This agreement between Mrs. Miller and the defendants was of one piece. She was to give up her contract upon the payment of the money that she had paid, together with 7 per cent. interest, and until that was done the transaction was nothing more than an unaccepted offer and was clearly what I have already said under the Roman law was called a "pollicitation."

Now that being so, the law of contracts is well settled that before an offer has been accepted it may be withdrawn, and here the only way of accepting this offer under the terms of the offer was the payment of the money by defendants, and had this money been paid, or tendered, on the 15th of September, when it was due by the terms of the letter of the 15th of August containing this check of $250, there is no question that it would have made a complete contract of cancellation, and Mrs. Miller would have been bound by it. But before anything had been done that would make this a binding contract by an acceptance, Mrs. Miller had withdrawn from this contract, as she had the right to do, and so far as the contract of cancellation in March was concerned that was ended by reason of non-compliance, or the non-acceptance of the offer by payment at the proper time.

Now, the question then arises, what has become of the original contract? Now, remember that Mrs.

Miller always retained possession of that land contract, and, so far as it appears, was able and willing to make the periodic payments, and was only prevented from paying them by reason of this outstanding tentative agreement which had not been accepted by the defendants by the payment of the money. That was a condition precedent and, therefore, this contract of March was done away with by the notification of the Millers to the defendants that they would not be bound by it; that they would stand upon their original contract.

Much learning and ingenuity have been expended in the briefs, much of which is unnecessary, because, eliminating the tentative contract of March, what do we have? We have a plain contract, in writing, describing the piece of land, setting forth specifically the terms, which, if complied with, would result in the transfer of the title from the defendants to the plaintiff. Now, in the meantime, the plaintiff has, by standing by, permitted the defendants to so use this property that the defendants can no longer transfer the property to her. At least a part of it has become a street, and has become a part of an accepted plat, and part of it was dedicated as a street to the public, but does that mean that the plaintiff can have no redress, no remedy? Surely not. The law is well settled that, if a party has the right to specific performance, and something has turned up so that the defendants have no longer control of the title, plaintiff can get an accounting, or get the value of the property that is in question.

Now, that is what the pleadings ask for in this case, and we do not know whether the land is of more value or of less value. We do know that before there

had been any attempt at forfeiture upon the part of the defendants, the plaintiff had tendered all the money that she was called upon to tender, and had demanded a deed for this property. Now, if the defendants are not in a position to convey by deed, they cannot be penalized in the instant case, because of the acquiescence in the so-called arrangement in March by the plaintiff, but that does not prevent the plaintiff from having an accounting and recovering whatever this land is worth now by reason of the changed situation by allotment, and if such settlement redounds to the financial advantage of the plaintiff, there can be no blame attached to anybody except the defendants because of their dilatory manner in carrying out their arrangement of March, which would have resulted in a cancellation of this land contract; and, they not having done so, the rights of the plaintiff remained intact.

Now, much ingenuity was expended in the brief in discussing the statute of frauds. Well, this contract was, of course, within the statute of frauds, which had been complied with, and the courts abhor a forfeiture, and if a suit had been brought to forfeit this so-called land contract, and appropriate the money that had been paid, and if before that suit had been tried the parties had come into a court of equity and tendered the costs of the suit, and the money that was due, and the interest thereon, no court of equity in the world would have decreed a forfeiture, because time of payment can scarcely be the essence of a contract in a case such as that, and it would be inequitable for a court to so hold in a case of this character, or in cases like it, and so we think that the plaintiff is entitled to the relief sought,

and, inasmuch as there can be no conveyance of this property, for the reasons already outlined, the plaintiff cannot have specific performance, but is entitled to an accounting, and the defendants must account to the plaintiff for the value of this lot as it now exists.

A decree may be drawn embodying these ideas. So the decree will be for the plaintiff for an accounting and the payment to plaintiff of whatever sum shall be found to be the value of this property as it now exists.

*Decree accordingly.*

SULLIVAN, P. J., and LEVINE, J., concur.